The judgment of the court was pronounced by
Slidell, J.
McGinnis and Hynes, two of the defendants, are sued as endorsers of a promissory note made by Kennedy. At the trial of the cause the plaintiff, in order to prove demand of the maker, offered in evidence a notarial protest of the following tenor. “ United States of America. State of Louisiana. By this public instrument of protest, be it known, that, on this thirteenth day of April, in the year one thousand eight hundred and fifty, at the request *750 of the cashier of, and the holder for the Louisiana State Bank of the original note, whereof a true copy is on the reverse hereof written; I, Achille Chiapella, notary public, dwelling in the city of New Orleans, duly commissioned, through Selim Magner, my lawful and duly sworn deputy, demanded payment for said note at the domicil of the maker thereof, corner of Elysian Fields and Morales streefs; I was answered by his wife, to whom I presented said note, that the said maker was not there and had left no funds to pay .the same. Whereupon I, the said notary, at the request aforesaid, did protest, and by these presents do publicly and solemnly protest as well against the drawer or maker of the said note as against all others whom it doth or may concern, for all damages, costs, charges, and interest, suffered or to be suffered for want of payment of the said note. This done and protested in the presence of Selim Magner and Edward GottschaUe. In testimony whereof, I grant these presents under may signature, and the impress of my seal of office, at the city of New Orleans, on the day and year first above written, [n. s.] A. Chuíeiia, Notary Public. Witnesses: E. Gottschauc; S. Magner.” “$400 00. New Orleans, January 10th, 1850. Ninety days after date, I promise to pay to the order of Mr. John McGinnis, the sum of four hundred dollars, value received. (Signed,) Edward P. Kennedy. (Endorsed,) John McGinnis, Thomas Haynes, A. Dedamare.” “ I, the undersigned notary, do hereby certify, that the parties to the note, whereof a true copy is embodied in the accompanying act of protest, have been duly notified of the protest thereof by letters to them by me written and addressed, dated on the day of said protest, and served on them respectively, this day, in the manner following, viz: through Edward Gottschalk, my lawful and duly sworn deputy, on John McGinnis, first endorser, personally; on Thomas Haynes, second endorser, left at his domicil on the levee, with his wife; on A. Delamare, third endorser, personally. In faith whereof, I have hereunto signed my name, together with Selim Magner and Edward Goilschalk, witnesses, at New Orleans, this 15th day of April, 1850, the 14th being a Sunday. (Signed,) S. Magner ; E. Gottschauc, A. Chia-PEitiA, notary public.” “I certify the foregoing to be a true copy of the original acton record in my office. New Orleans, this 12th June, 1850. A. Chiapella, Notary Public.”
To the reception of the document in evidence the defendants objected, and the district judge received it under reservation, and, eventually, in deciding the cause, rejected it, upon the ground “that the demand was made by Magner, the deputy, who was also one of the witness.” The judge’s reasons for so ruling are stated as follows: “The first section of the law of 1821, which makes the certificate of the notary proof of notice, requires the record to be made by the notary and two wil nesses. In practice it has been considered proof of demand as well as of notice. If Chiapella, the notary, had been one of these witnesses, it is very plain such a certificate would not be made by the notary and two witnesses. I cannot perceive any difference in principle where his deputy is acting. This law has always been strictly construed as derogating from the general rules of evidence. 3 N. S. 444. 4 N. S. 125. 5 N. S. 65, 513. 6 N. S. 394, 457. The protest must be rejected, and as there is no other proof of demand, the endorsers are discharged. There is, therefore, judgment in their favor.”
We do not concur in the opinion of the district judge; and as the matter is one of great practical importance, we have thought it proper to give at length the masons for our dissent.
*751 For the proper consideration of this subject it is necessary to take a retrospective view of the legislation on the subject of protest of bills and notes, and of the reasons which probably influenced the lawgiver in that legislation. In doing so we are in a great measure repeating what was said by this court in the case of the Citizens' Bank v. Bry, 3d Ann. 631. As we then observed, the rules of evidence had been, in aid of commerce, so far relaxed as to allow a protest of a foreign bill of exchange, apparently under the seal of a notary public, and made abroad, to prove itself and establish the dishonor. But a notarial protest was not admitted in the case of a foreign bill, where the protest was made in the country in which it was offered. See Chesmer v. Noyes, 4 Campbell, 129, cited by Chitty, Bills, p. 643. But as commerce increased in this country, and the great mass of mercantille transactions came to be represented by bills of exchange and promissory notes, many of the States of this Union, for the purpose of facilitating commerce by rendering the remedy upon bills and notes convenient and safe, passed statutes clothing notaries public with authority to demand payment and give notice of protest of bills and notes, and making their notarial records of their acts, and certified copies of them, authentic evidence. Such was the spirit and intention of the two statutes of this State enacted in 1821 and 1827.
The first section of the act of 1821 is as follows : “Be it enacted, &c., that the notaries and parish judges shall keep a separate book, in which they shall transcribe and record, by order of date, all the protests by them made, with mention of the notices which they shall have given of the same to the drawers or endorsers thereof, together with the names of the said drawers or endorsers, the date of the said notices, and the manner in which they were served or forwarded to the said drawers and endorsers; which declarations, duly recorded under the signature of the said notary public or parish judge and two witnesses, shall be considered and received in all courts of this State as a legal proof of the said notices.”
The first section of the amendatory act of 1827 is as follows : “ Be it enacted, <fcc., that all notai'ies, or persons acting as such, are authorized in their protests of bills of exchange, promissory notes, or orders for the payment of money, to make mention of the demand made upon the drawer, acceptor, or person on whom such order or bill of exchange is drawn or given, and of the manner and circumstances of such demand ; and by certificate added to such protest, to state the manner in which any notices of protest to drawers, endorsers, or other persons interested, were served or forwarded; and whenever they shall have so done, a certified copy of such protest and certificate shall be evidence of all the matters therein stated.” Moreau’s Dig. vol. 1, pp. 93, 96.
It will be observed, that the amendatory statute of 1827 makes no express mention of witnesses; but it has been held that such attestation is necessary under both. See Gas Bank v. Nutall. 19 L. R. 449. And the practice of notaries has, for many years, been in accordance with that interpretation. For the purposes of the present inquiry, we will therefore assume that point as settled.
Under a fair interpretation of both statutes, it is obvious that these recorded declarations and certificates of notaries were efficacious as authentic evidence only so far as they declared or certified demands made, and notices given by themselves. Consequently, it was held in Raby v. Brown, 14 L. R. 247, that a notary’s certificate that notice was delivered by a third person, was insufficient to prove the liability of the endorser. “ If,” said the court, “the notary had certified the manner in which he had served the notices, it would have been *752 good evidence under the statute; but he cannot certify what was done by others out of his presence.”
Subsequent to these enactments, in consequence partly of the natural enlargement of our commerce, and partly of the artificial extension of credit produced by the mulliplication of banks in this State, there was an enormous increase of negotiable paper. It was found that these statutes were inadequate to the full accomplishment of the end proposed. It became necessary to relieve notaries from the pressure of business, which at certain seasons of the year takes place in a great commercial city, where the collection of mercantile obligations is accomplished almost entirely through the banks. A bank’s notary would frequently find it impossible to make all the presentations and deliver all the notices personally. To remedy this inconvenience was unquestionably the motive of the statute of 1844, (p. 26,) which enacts as follows : “ That it shall be lawful for each and every notary public in New Orleans, to appoint one or more deputies to assist him in the making of protests and delivery of notices of protests of bills of exchange and promissory notes; provided, that each notary shall be personally responsible for the acts of each deputy employed by him ; and provided that each deputy shall take an oath faithfully to perform his duties as such before the judge of the parish in which he may be appointed ; and provided the certificate of notice or protest shall state by whom made or served.”
As we said in Bry's case, the former statutes were intended to establish a convenient and permanent means of proof: and the statute of 1844 was not intended to impair the beneficial provisions of the antecedent laws, but, preserving them, to fiicilitate the notaries in the performance of their duties. Why direct the form of the certificate, if, when made, it could not be used ?
It seems to us clear, that, under this statute, it is still the notary, and not his deputy, who is to declare, record, and certify how the demand was made and notice given ; and that the intention of the lawgiver was, to enable him to do what before he could not do, declare and certify what was done by another. To say that the certificate of notice or demand was intended to be made by the deputy and not by the notary, would conflict with the last clause of the statute, which directs that the certificate of notice or protest shall state by whom made or served. The obvious meaning is, that the notary shall state the name of the deputy by whom the demand was made or notice given. See also Citizens' Bank v. Bry, 3d Ann, 630.
Such being the intention of the law, we are unable to perceive how the fact that an individual has been employed by the notary as his deputy to make a demand or deliver a notice, disqualifies him from being an attesting witness to the notary’s declaration or certificate that such an act was done by that individual. The error of the counsel for the defendants is in confounding two things which are distinct: the act of making a demand or giving notice, and the recorded declaration or certificate that such an act has been done. When the deputy has made the demand and given the notices his function as deputy is at an end; and when the notary comes to declare or certify what has been done, we see no reason why he may not call the person who had acted as deputy to attest the declaration or certificate, as well as any other competent witness. The purpose of attestation is fully attained ; which purpose, as the court said in The Gas Bank v. Nutall, was to create a check upon the notary, and prevent him from ante-dating a certificate.
In conclusion, it is proper to observe, that we believe the practice of the notaries under the act of 1844 has, ever since its passage, uniformly been in substan *753 tial accordance with the form used by the notary in the present case. This contemporaneous construction of the statute by public officers acting under it, is certainly entitled to-consideration.
It is therefore decreed, that, the judgment be feversed,- and that this cause be remanded for further proceedings according to law; the plaintiff paying the costs of the appeal.